MADISON TRUST COMPANY, Appellant and Respondent, *v.* CARNEGIE TRUST COMPANY et al., Respondents and Appellants.

Trust companies — receipt by trust company of sum of money under agreement to purchase certain stocks, to hold same in trust for payor and to repay any balance, constitutes a trust — such trust not a preferred claim under section 190 of Banking Law — on default and insolvency of trust company, payor may recover a money judgment.

In an action in equity for the purpose of adjudging a trust to exist in favor of the plaintiff and for an accounting and that the plaintiff's claim be preferred over the claims of the general creditors of the defendant insolvent trust company it appeared that the plaintiff's predecessor, a trust company, paid to the defendant trust company a sum of money with which said defendant by a written instrument signed by its vice-president agreed to purchase certain stocks and "to hold in trust for you, or any trustee named by you, the above collaterals as paid for by us at prices mentioned above. Whatever part of the above amount is not employed in the purchase of the above stocks, shall be subject to your order at any time." The defendant trust company disposed of the fund in violation of the agreement, having used no part thereof for the purchase of the agreed stocks. It is not the holder of any such stocks nor has it repaid any part of the said sum. It has since been closed by the superintendent of banks, with whom the plaintiff has filed a claim demanding an accounting. *Held*, upon examination of the evidence, *first*, that the defendant trust company received the

money from the plaintiff's predecessor under the trust set out in the instrument above referred to and that in the transaction the defendant trust company was represented by its authorized agents and cannot now be permitted to repudiate the obligations which it assumed because of evil purposes actuating those who controlled its corporate action; *second,* that the debt due from the defendant trust company was not such a "trust" as is contemplated by section 190 of the Banking Law (Cons. Laws, ch. 2) and that plaintiff is not entitled to a preference; *third,* that plaintiff is entitled to a money judgment; that as there was a trust, those for whose benefit the trust was created have the right to an accounting and that neither the fact that the plaintiff is not entitled to a preference, nor the fact that only a money judgment can result from the accounting, deprives the *cestui que trust* of this right.

*Madison Trust Co.* v. *Carnegie Trust Co.,* 167 App. Div. 4, affirmed.

(Argued June 3, 1915; decided July 13, 1915.)

Cross-appeals from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 20, 1915, modifying and affirming as modified a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John Quinn* and *Justus Sheffield* for plaintiff, appellant and respondent.   The trust letter was duly executed by the Carnegie Trust Company, and the moneys therein referred to were duly paid by the plaintiff to and received by the trust company. (*Rathbun* v. *Snow,* 123 N. Y. 343; *Standard Fashion Co.* v. *Siegel-Cooper Co.,* 44 App. Div. 121; *Newman* v. *Lee,* 87 App. Div. 116; *Hastings* v. *Brooklyn Life Ins. Co.,* 138 N. Y. 473; *Patterson* v. *Robinson,* 116 N. Y. 193; *Oakes* v. *Cattaraugus Water Co.,* 143 N. Y. 430; *Sun Printing & Pub. Co.* v. *Moore,* 183 U. S. 642; *Furber* v. *National Metal Co.,* 118 App. Div. 263; *Hutchinson* v. *Manhattan Co.,* 150 N. Y. 250; *Smith* v. *Smith,* 62 Ill. 493.) The trust letter

declared a valid and enforceable trust of the proceeds of the notes therein described and of any stocks which were to be purchased under its terms. (*Martin* v. *Funk,* 75 N. Y. 135; *Barry* v. *Lambert,* 98 N. Y. 300; *Brown* v. *Spohr,* 180 N. Y. 201; *People* v. *City of Rochester,* 96 N. Y. 33; *Massey* v. *Fisher,* 62 Fed. Rep. 958; *Cutler* v. *Am. Ex. Bank,* 113 N. Y. 593; *People ex rel. Zotti* v. *Flinn,* 185 App. Div. 276; *Bergstresser* v. *Lodwick,* 37 App. Div. 629; *Strauss* v. *Tradesmen's Nat. Bank,* 122 N. Y. 379.) The plaintiff is entitled to a decree for the amount of the trust fund "as a debt due from the Carnegie Trust Company as trustee," which is a preferred claim under the Banking Law. (L. 1909, ch. 10, art. 5, §§ 189, 190; *Henkel* v. *Carnegie Trust Co.,* 213 N. Y. 185.)

*Joseph A. Kellogg, Clarence W. Gormly* and *George A. Blauvelt,* for defendant, respondent and appellant. No liability in favor of the plaintiff is established against the Carnegie Trust Company. (*Manhattan Life Ins. Co.* v. *Forty-second St. R. R. Co.,* 139 N. Y. 146; *Henry* v. *Allen,* 151 N. Y. 1; *Brooklyn Distilling Co.* v. *Standard Distilling Co.,* 193 N. Y. 551; *B. C. Inst.* v. *Bitter,* 87 N. Y. 250; *Alexander* v. *Cauldwell,* 83 N. Y. 480; *People's Bank* v. *St. Anthony's R. C. Church,* 109 N. Y. 512; *Wilson* v. *Kings County E. R. Co.,* 114 N. Y. 487; *Columbia Bank* v. *Gospel Tabernacle Church,* 127 N. Y. 361; *Gause* v. *Commonwealth Trust Co.,* 196 N. Y. 134; *Davidge* v. *Guardian Trust Co.,* 203 N. Y. 331; *Jacobus* v. *Jamestown Mantel Co.,* 211 N. Y. 154; *Ballston Terminal R. R. Co.* v. *Hudson Valley Ry. Co.,* 76 App. Div. 184; *Coney Island Automobile Race Co.* v. *Boyton,* 87 App. Div. 251.) The claim in action can under no circumstances be allowed as a preferred claim. (*Davis* v. *Elmira Savings Bank,* 161 U. S. 275; *Strauss* v. *Tradesmen's Nat. Bank,* 122 N. Y. 379; *Officer* v. *Officer,* 120 Iowa, 389; *Paul* v. *Draper,* 158 Mo. 197; *Butcher* v. *Butler,* 134 Mo. App. 61; *Minard* v. *Watts,*

186 Fed. Rep. 245; *Henkel* v. *Carnegie Trust Co.*, 213 N. Y. 185; *Bank of Chattanooga* v. *Bank of Memphis*, 56 Tenn. 408; *State* v. *Bank*, 58 Neb. 818; *Cavin* v. *Gleason*, 105 N. Y. 256.)

SEABURY, J.   This is an action in equity for the purpose of adjudging a trust to exist in favor of the plaintiff and for an accounting and that the plaintiff's claim be preferred over the claims of the general creditors of the insolvent Carnegie Trust Company.   The predecessor of the plaintiff was the Van Norden Trust Company, a corporation duly organized and existing under and by virtue of the Banking Laws of the state of New York.   On April 7th, 1910, Warner Van Norden and Warner M. Van Norden and persons acting for them owned and controlled 1,740 shares of the capital stock of the Nineteenth Ward Bank and 1,260 shares of the stock of the Twelfth Ward Bank.   On that day the Van Nordens gave to William J. Cummins an option to purchase within ten days thereafter the said shares of stock of the Nineteenth Ward Bank and the Twelfth Ward Bank.   On April 19th, 1910, and during that month, there were loans of the Van Nordens and their friends in certain banks and trust companies in the city of New York aggregating $575,000.   These loans were secured by 1,725 shares of the stock of the Nineteenth Ward Bank and 1,259 shares of the stock of the Twelfth Ward Bank.   The Van Nordens were in bad financial repute and their loans were in danger of being called by the makers.   If these loans had been called a prejudicial effect would be produced on the Van Norden Trust Company, the Nineteenth Ward Bank and the Twelfth Ward Bank.   This matter was the subject of discussion at the meeting of the directors of the Van Norden Trust Company.   As a result of this discussion it was suggested at such meeting on April 19th, 1910, by William J. Cummins and others that the Van Norden Trust Company advance sufficient money to take

up a portion of the loans of the Van Nordens. The suggestion was adopted and a resolution was passed approving applications for loans to Condon for $75,000, Reichmann for $60,000, Moore, Jr., for $60,000, and Crabbs for $60,000. The intent and purpose of making these loans to these individuals was that the money loaned should be used for the purpose of purchasing on behalf of the Van Norden Trust Company the stock of the Nineteenth Ward Bank and the Twelfth Ward Bank. The notes of Condon, Reichmann and Moore aggregating $195,000 were on April 21st, 1910, executed each payable on demand and delivered to the Van Norden Trust Company. The Van Norden Trust Company delivered the proceeds of these notes to the Carnegie Trust Company and an instrument dated April 20th, 1910, was signed by the vice-president of the Carnegie Trust Company and delivered to the president of the Van Norden Trust Company. That instrument plays an important part in this case and is set forth in full. It is as follows:

"NEW YORK, *April* 20, 1910.

"Mr. WATKINS CROCKETT, President,

"Van Norden Trust Company,

"Fifth Avenue, New York City:

"DEAR SIR.— We acknowledge the receipt hereof from the Van Norden Trust Company of one hundred and ninety-five thousand dollars ($195,000), the proceeds of the following notes:

Demand note of Martin J. Condon...... $75,000.00
Demand note of Joseph B. Reichmann..  60,000.00
Demand note of Charles A. Moore, Jr...  60,000.00

"The above amount to be used by us towards the payment of Carnegie Trust Company stock at $1.75; Nineteenth Ward Bank stock at $2.50; Twelfth Ward Bank stock at $1.00.

"We agree to hold in trust for you, or any trustee named by you, the above collaterals as paid for by us at

prices mentioned above. Whatever part of the above amount is not employed in the purchase of the above stocks, shall be subject to your order at any time.

"Yours very truly,

" (Signed)     R. L. SMITH, *Vice-President.*"

The figures " $1.75," " $2.50," and " $1.00 " in the agreement of April 20, 1910, were intended by the parties to mean $175, $250 and $100 respectively. This instrument was delivered on April 21st, 1910, to the Van Norden Trust Company together with the promissory notes of Reichmann and Moore and on the day following the promissory note of Condon, and the face value of these notes ($195,000) was paid by check given by the Van Norden Trust Company to the Carnegie Trust Company. The court has found that " It was agreed between the Van Norden Trust Company and the officers or agents of said company who acted in its behalf, and by the Carnegie Trust Company and the officers or agents of said company who acted in its behalf, that the proceeds of said loans to Condon, Reichmann and Moore should be paid in trust to a trustee who should hold the same as collateral security to said loans, with power in said trustee to purchase out of said trust fund the stocks described in said agreement of April 20, 1910, which stocks, if and when so purchased, were likewise to be held in trust by said trustee as collateral security for said loans.

"It was agreed between the Van Norden Trust Company and the officers or agents of said company who acted in its behalf, and by the Carnegie Trust Company and the officers or agents of said company who acted in its behalf, that the said loans to Martin J. Condon, Joseph B. Reichmann and Charles A. Moore, Jr., should be secured loans."

The court has found that the Carnegie Trust Company on April 21 or 22, 1910, disposed of the fund of

$195,000, referred to in the agreement of April 20th, 1910, in violation of and contrary to the terms and provisions of that agreement. The manner in which the Carnegie Trust Company violated the provisions of the agreement of April 20th, 1910, was that it used no part of the proceeds of the notes of Condon, Reichmann and Moore, the $195,000 already referred to, in the purchase of the shares of stock of the Carnegie Trust Company, the Nineteenth Ward Bank and the Twelfth Ward Bank. No stock of the Nineteenth Ward Bank, the Twelfth Ward Bank or the Carnegie Trust Company was ever purchased by the Carnegie Trust Company to be held for the benefit of the Van Norden Trust Company and the Carnegie Trust Company is not now the holder of any such stock. The stocks referred to in the option agreement of April 7th, 1910, between the Van Nordens and Cummins were the same shares of stock of the Nineteenth Ward Bank and the Twelfth Ward Bank which were referred to at the meeting of the directors on April 19th, 1910, where it was decided that the Van Norden Trust Company would advance money to take up the various loans of the Van Nordens. Subsequently and during August, September, October and November, 1910, it appears that Bradley Martin as president of the Nineteenth Ward Bank issued certificates of stock of that bank to William J. Cummins and his friends in lieu of the shares that theretofore had stood in the names of the Van Nordens and which was the same stock that Cummins had purchased from the Van Nordens under the option agreement of April 7th, 1910. It clearly appears that William J. Cummins was the dominant and controlling factor in the Carnegie Trust Company and that he and his associate directors, Condon and Moore, owned 2,550 shares of its capital stock. It also appears that said Cummins was generally active in and about the affairs and business of the Carnegie Trust Company as its representative and agent on or about April 21st, 1910, and for

31

some time prior thereto and subsequent thereto until. January 7th, 1911, when the Carnegie Trust Company was closed by the superintendent of banks. On January 7th, 1911, Reichmann and Moore were adjudicated bankrupts and subsequently Condon was adjudicated a bankrupt. No part of the sum of $195,000 paid by the Van Norden Trust Company to the Carnegie Trust Company has been repaid. On April 14th, 1911, this plaintiff as successor of the Van Norden Trust Company filed with the superintendent of banks, then in control of the Carnegie Trust Company, a claim demanding that the Carnegie Trust Company account to it for the said sum of $195,000. Upon these complicated facts three questions of law are presented. *First,* was a trust created under the letter of April 20th, 1910? *Second,* if so, was the plaintiff entitled to a preference under the statute? *Third,* can the plaintiff recover in this action if it is not entitled to a preference? The claim urged below that even if there is no statutory preference the plaintiff is entitled in equity to an equitable lien and the establishment of a trust, is obviously untenable as there is no basis for holding that any equitable lien attached and the funds of the Van Norden Trust Company are incapable of being traced. (*Matter of Cavin* v. *Gleason,* 105 N. Y. 256; *Atkinson* v. *Rochester Printing Co.,* 114 N. Y. 168; *Matter of Hicks,* 170 N. Y. 195.) Two contentions are made in reference to the circumstances under which the proceeds of the Reichmann, Condon and Moore notes were turned over by the Van Norden Trust Company to the Carnegie Trust Company. On behalf of the plaintiff it is claimed that the circumstances were such that a *bona fide* trust was created under which the Carnegie Trust Company held those proceeds. On behalf of the defendant it is claimed that the so-called letter of trust of April 20th, 1910, and the circumstances under which those funds were delivered were a mere sham and cover for illegal and improper transactions.

Acceptance of the trust attempted to be created under the letter of April 20th, 1910, was not beyond the authorized powers of the Carnegie Trust Company. (Section 2 of chap. 599 of the Laws of 1898, as amended by chap. 293 of the Laws of 1899 and chap. 147 of the Laws of 1906.) If the insolvency of the Carnegie Trust Company had not revealed the corrupt methods by which that institution was conducted, there would hardly be room in the case for the suggestion that when the vice-president of the Carnegie Trust Company signed the letter of April 20th, 1910, he did not do so as the authorized representative of the Carnegie Trust Company. (*Oakes* v. *Cattaraugus Water Co.,* 143 N. Y. 430, 436; *Hastings* v. *Brooklyn Life Ins. Co.,* 138 N. Y. 473, 479; *Young* v. *U. S. Mortgage & Trust Co.,* 214 N. Y. 279.) Those who controlled the Carnegie Trust Company are responsible for their unlawful acts and some of them have already been held criminally responsible for their participation in these transactions. (*People* v. *Cummins,* 153 App. Div. 93; affirmed, 209 N. Y. 283.) In the transaction with the Van Norden Trust Company the Carnegie Trust Company was represented by its authorized agents and the Carnegie Trust Company cannot now be permitted to repudiate the obligations which that company assumed because of the evil purpose actuating those who controlled its corporate action. Authorities are not wanting to sustain the conclusion at which we have arrived that the Carnegie Trust Company received the $195,000 from the Van Norden Trust Company under the trust set out in the letter of April 20th, 1910. (*Brown* v. *Spohr,* 180 N. Y. 201; *Rogers* v. *N. Y. & T. L. Co.,* 134 N. Y. 197; *Cutler* v. *Amer. Ex. Nat. Bank,* 113 N. Y. 593; *Barry* v. *Lambert,* 98 N. Y. 300; *Rogers Locomotive & M. Works* v. *Kelley,* 88 N. Y. 234; *Martin* v. *Funk,* 75 N. Y. 134.) It being evident that the Carnegie Trust Company received the money in trust, it is necessary to determine whether the trust that existed by virtue of the

voluntary act of the parties was of such a nature and character as to constitute a preferred claim under section 190 of the Banking Law. We think that the debt due from the Carnegie Trust Company was not such a "trust" as is contemplated by section 190 of the Banking Law. (Cons. Laws ch. 2.) That section provides as follows:

"Section 190. No security required: trust fund debts preferred. No bond or other security, except as hereinafter provided, shall be required from any such corporation for or in respect to any trust, nor when appointed executor, administrator, guardian, trustee, receiver, committee or depositary. All investments of money received by any such corporation, and by any trust company chartered by special act, prior to May eighteenth, 1892, in either of such characters shall be at its sole risk and for all losses of such money the capital stock, property and effects of the corporation shall be absolutely liable, unless the investments are such as the courts recognize as proper when made by an individual acting as trustee, executor, administrator, guardian, receiver, committee or depositary, or such as are permitted in and by the instrument or words creating or defining the trust. If dissolved by the legislature or the court, or otherwise, the debts due from the corporation as such executor, administrator, guardian, trustee, committee or depositary shall have the preference. The court or officer making such appointment may, upon proper application, require any corporation which shall have been so appointed, to give such security as to the court or officer shall seem proper, or upon failure of such corporation to give security as required, may remove such corporation from and revoke such appointment. Such court or officer may make orders respecting such trusts and require the corporation to render all accounts which such court or officer might lawfully require if such executor, administrator, guardian, trustee, receiver, committee or depositary were a natural person. Whenever any

such corporation shall be designated by the comptroller of the State of New York as a depositary for funds and moneys paid into court, before receiving any such deposit, it shall give to the people of the state a bond in the form and manner, as provided by section forty-four of this chapter." (Thus amended by L. 1909, ch. 240, section 3, in effect April 22, 1909.)

The Appellate Division held that the trust created was not a preferred debt under this statute. We are urged to disapprove this interpretation. It is said that the words "in either of such characters" refer to voluntary trusteeships and relationships covered by the words "executor, administrator, guardian, trustee, receiver, committee or depositary." In support of this argument it is claimed that the use of the words "in *either* of such characters" instead of the words "in any of such characters" is significant. When the phrase used in the statute is considered in connection with its context in this section and the section preceding, it is not susceptible of the interpretation which the appellants would have us place upon it. So considered it plainly has reference to a trust company organized under this chapter (sections 187 and 188), and to any trust company chartered by special act, and provides that no bond need be given by the corporation accepting the trust "in either of such characters." It is claimed that to limit the language of section 190 to trustees judicially appointed or those specifically mentioned in the statute, fails to give effect to the phrase "for or in respect to any trust," and the words at the end of the second sentence "such as are permitted in and by the instrument or words creating or defining the trust." These general expressions detached from their context do not reveal the purpose of the statute as a whole. Thus in *Henkel* v. *Carnegie Trust Co.* (213 N. Y. 185, 192) this court, speaking through Judge CARDOZO, made reference to the general provision of section 190 of the Banking Law and said: "Plainly this provision was not intended

to control the judgment of foreign tribunals. The depositaries in view must have been those appointed by the courts of this State." Earnest appeal is made to the history of section 190 of the Banking Law in the effort to uphold the contention that this section was designed to refer to trusts created by the voluntary act of the parties as well·as to trusts created by the court and specifically named in the statute. The prevailing opinion in the Appellate Division deals so satisfactorily with this aspect of the case that it will not be necessary for us to enter upon any extensive discussion of it. The provisions of the Banking Law now under review are derived from chapter 546 of the Laws of 1887. That law with amendments thereto became a part of the General Banking Law. (Chap. 689 of the Laws of 1892.) Sections 157 and 158 of the Banking Law of 1892 made it very clear that those sections were designed to cover cases where the trustee was appointed under a will or was a judicial appointee, and in those cases such corporation as is therein specified may be appointed by the court to act in such capacity. These sections also in terms make it clear that the executor, administrator or trustees under a will are for the purpose of this section placed in the same category as other fiduciaries, who are, strictly speaking, appointed by the court. It is argued by the plaintiff, appellant, that the mention of executors in these sections shows that the sections were intended to apply to all trust relationships. The argument is not sustained by reference to the section. The express language which placed executors in the same category as fiduciaries appointed· by the court shows that the legislature in express language made an exception in the cases of executors that it did not make as to other fiduciaries who were not appointed by the court. Section 158 is also especially clear in revealing the legislative purpose to dispense with the requirement as to bonds or other security where the trustee is appointed by the court and is a corporation within the provisions of

the act.   It is not necessary to extend this opinion to the extent that would be required to enter into a detailed analysis of the provisions of these statutes.   It is sufficient to point out that as the statute stood in 1887 and under the General Banking Law of 1892 the cases in which a preference was granted in the event of insolvency were only those cases where the fiduciary was appointed by the court or under the provisions of a will and in those cases where the depositary became the fiduciary it was expressly exempted from giving security for the faithful discharge of its trust.   In all other cases where the trust was created by the voluntary act of the parties it was competent for the parties designating a trustee to require security if that was deemed necessary.   In the consolidation of 1909 the language of the statutes was somewhat changed and rearranged and new provisions were injected which seem to have obscured somewhat the meaning that was more plainly reflected in the briefer statute which preceded it.   There is, however, no basis for the contention that this consolidation of the laws attempted a change in the statute in this respect and the purpose which we have concluded was revealed in the statutes prior to the revision of 1909 is still evident in the statute in its present form.

The other question presented for determination is whether the plaintiff may have a money judgment in this action, although it has failed to establish that it is entitled to a preference either by statute or in equity and notwithstanding the fact that the Carnegie Trust Company did not buy any stock with the money that the Van Norden Trust Company transmitted to it.   We think that the plaintiff is entitled to such a judgment.   The plaintiff established that the Carnegie Trust Company took the money which it received from the Van Norden Trust Company under the trust agreement expressed in the letter of April 20th, 1910.   As there was a trust, those for whose benefit the trust was created have the

right to an accounting. Neither the fact that the plaintiff is not entitled to a preference, nor the fact that only a money judgment can result from the accounting, deprives the *cestui que trust* of this right.

It follows that the judgment appealed from should be affirmed, without costs.

WILLARD BARTLETT, Ch. J., CHASE, CUDDEBACK, HOGAN and MILLER, JJ., concur; HISCOCK, J., not sitting.

Judgment affirmed.